**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION**

| | | |
|---|---|---|
| **MICHAEL J. SOPHIN,** | § | |
| | § | |
| **Appellant,** | § | |
| | § | |
| **v.** | § | **EP-15-CR-418-KC** |
| | § | |
| **UNITED STATES OF AMERICA,** | § | |
| | § | |
| **Appellee**. | § | |

## OPINION

Defendant Michael J. Sophin ("Sophin") appeals his misdemeanor conviction under 18 U.S.C. § 111(a), for forcibly interfering with John Mossman, a United States Border Patrol agent ("Agent Mossman"). Sophin's primary argument on appeal is that there is insufficient evidence to uphold his conviction. The Court agrees, and reverses Sophin's conviction. Further, because the Court holds there is insufficient evidence to uphold Sophin's conviction, the Court does not reach the remaining issues raised in Sophin's appeal.

## I.      BACKGROUND

### A.      Procedural Background

On October 3, 2014, United States Border Patrol ("Border Patrol") agents arrested Sophin at the Border Patrol Checkpoint on Interstate Highway 10 East approximately four miles west of Sierra Blanca, Texas ("Checkpoint"), located within the Western District of Texas. *See* Compl. 2-3. Initially, the Government charged Sophin with the felony of High Speed Flight from an Immigration Checkpoint in violation of 18 U.S.C. § 758. *See* Compl., *United States v. Sophin*, EP-14-MJ-3889-RFC, ECF No. 1 (W.D. Tex. Oct. 6, 2014). However, the Government dismissed that case on October 9, 2015. *See* Order of Dismissal, EP-14-MJ-3889-RFC, ECF No.

8 (W.D. Tex. Oct. 9, 2014). That same day, the Government charged Sophin with the misdemeanor offense of forcibly assaulting, resisting, opposing, impeding, intimidating, or interfering with a Border Patrol agent engaged in his official duties, in violation of 18 U.S.C. § 111. *See* Compl., *United States v. Sophin*, EP-14-MJ-3964-RFC (W.D. Tex. Oct. 9, 2014). [1]

On January 6, 2015, a jury trial began in the magistrate court. Jury Trial Tr. 112, ECF No. 72. The Government rested at the end of the day. *Id*. at 179:7-8. Sophin did not present any witnesses. *Id*. at 179:15-22. Instead, he moved for a judgment of acquittal, arguing that the Government had not proved he "forcibly" impeded or interfered with Agent Mossman when he refused to answer questions and drove away from the Checkpoint. *Id*. at 181-83. The magistrate court took the motion under advisement, *id*. at 188:12-13, but orally denied Sophin's motion for judgment of acquittal on January 7, 2015, Jury Trial Tr. Vol. 2 of 2, 3:3, ECF No. 67. On January 7, 2015, the jury returned a guilty verdict against Sophin for forcibly interfering with Agent Mossman. Verdict, ECF No. 60.

On January 21, 2015, Sophin filed a written motion for judgment of acquittal pursuant to Federal Rule of Criminal Procedure 29, or in the alternative, for a new trial. Mot. for Acquittal, ECF No. 68. On February 9, 2015, the magistrate court denied the motion for acquittal and for a new trial. Order, ECF No. 71.

On March 16, 2015, the magistrate court sentenced Sophin to eight months of imprisonment followed by one year of supervised release, and imposed a special assessment of $25.00. Misdemeanor Sent'g, ECF No. 78. Sophin filed a timely notice of appeal on March 25, 2015. Notice of Appeal, ECF No. 81. This Court has jurisdiction over the appeal pursuant to 18 U.S.C. § 3402.

---

[1] All court documents and ECF numbers the Court cites henceforth correspond to the docket from the magistrate court case, *United States v. Sophin*, EP-14-MJ-3964-RFC, unless otherwise noted.

In his appeal, Sophin asks this Court to overturn his conviction by finding there is insufficient evidence that he forcibly interfered with Agent Mossman. Appellant's Br. 19-33, EP-15-CR-418-KC, ECF No. 13. Sophin also presents five alternative arguments on appeal, asking the Court to: (1) vacate his conviction and grant him a new trial because the magistrate court failed to define "forcibly" for the jury; (2) vacate his conviction because § 111(a) is unconstitutionally vague and overbroad; (3) vacate his conviction and grant him a new trial because the magistrate court erred in allowing Agent Mossman to testify as to legal conclusions; (4) vacate his conviction and grant him a new trial because the errors at trial, in the aggregate, denied him his constitutional right to a fair trial; and (5) vacate his sentence because the magistrate court erroneously scored three of Sophin's prior misdemeanor convictions for criminal history purposes. *Id*. at 34-49.

On November 19, 2015, the Government filed a Motion to Remand for New Trial, conceding that the magistrate court should have defined "forcibly" in its instructions to the jury, and urging the Court to remand for a new trial. Mot. to Remand for New Trial 2-3, EP-15-CR-418-KC, ECF No. 18 (W.D. Tex. Nov. 19, 2015). On November 20, 2015, the Court heard oral arguments, primarily on the issue of sufficiency of the evidence. *See* Oral Argument, EP-15-CR-418-KC, ECF No. 19.

### B. Factual Background

The evidence the Government presented at trial relevant to this appeal includes a video Sophin recorded using a camera he had placed inside his car, along with a video recorded by Border Patrol at the Checkpoint.[2] Gov't Ex. 1; Gov't Ex. 2; *see* Pretrial Conf. Tr. 12-15, ECF No. 83. Sophin's video provided an audio recording of the event, while the Checkpoint video,

[2] The videos were played in open court, however their contents were not transcribed. *See* Jury Trial Tr. 152:15-154:17. Sophin's video was introduced as Government's Exhibit No. 1, and the Border Patrol video was introduced as Government's Exhibit No. 2. *See id*.

which was captured from a higher vantage point, did not.  *See* Gov't Ex. 1; Gov't Ex. 2; Pretrial Conf. Tr. 12-14.  Additionally, the Government presented testimony from Agent Mossman and the agent that arrested Sophin.  *See generally* Jury Trial Tr. 147-69, 170-77.  The evidence produced at trial sets forth the following facts:

On the evening of October 3, 2014, Agent Mossman was stationed at the Checkpoint.  *Id.* at 150:3-18.  At one point, a white van failed to stop where Agent Mossman was standing.  *Id.* at 168: 10-23; Gov't Ex. 2.  Agent Mossman either yelled or signaled at the van to stop.  Jury Trial Tr. at 168:15-18.  The van then stopped and Agent Mossman questioned the occupants.  *Id.* at 168:15-169:6.  The van then drove away.  Gov't Ex. 2.

Shortly thereafter, Sophin approached the Checkpoint in his Dodge Magnum.  Jury Trial Tr. 150, 152:2-3, 155:3.  He had a video camera mounted inside his car that was turned on and recording his interaction with Agent Mossman.  *See id.* at 155:9-17; Pretrial Conf. Tr. 12:22-24.

When Sophin pulled up to the Checkpoint, Agent Mossman asked Sophin whether he was traveling by himself, and Sophin replied that he was.  Jury Trial Tr. 152:2-3.  Agent Mossman then attempted to determine Sophin's alienage by asking him if he was a United States citizen. *See id.* at 152:3-4, 153:3, 153:10-14; Gov't Ex. 1.  Sophin responded: "You know, I was going to tell you I wasn't going to take any questions today, and then I realized that, as a matter of fact a girlfriend reminded me, that if Obama is letting everybody in the country . . . ."  Gov't Ex. 1. Agent Mossman asked Sophin whether he was a U.S. citizen three more times, and Sophin repeatedly told Agent Mossman he was not going to answer the question.  *Id.*

Agent Mossman then turned to look over his shoulder, Gov't Ex. 2, intending to refer Sophin to an area directly behind him where Sophin would be questioned further, Jury Trial Tr. 153:20-24.  At the same time, Sophin said, "Okay, thanks, good night," and drove away.  Gov't

Ex. 1; Gov't Ex. 2.  Agent Mossman told Sophin he was "not free to go," as Sophin drove away.

Gov't Ex. 1.  The exchange lasted for approximately thirty seconds.  *See id.*  Agent Mossman

testified that after Sophin drove away, he used his hand-held radio to request that a supervisor

come outside "[b]ecause . . . Sophin had not answered [his] questions."  Jury Trial Tr. 157:1-5.

     During the exchange, there was no physical contact between Sophin and Agent

Mossman.  *Id.* at 165:11-12, 167:21-22.  Agent Mossman testified that when Sophin drove away,

Sophin did not "rev up his engine," threaten Agent Mossman, attempt to run Agent Mossman

over, and did not "take off, leaving tire marks" at the Checkpoint.  *Id.* at 167:18-168:2.  Agent

Mossman agreed on cross-examination that "[e]ssentially, [Sophin] pulled away."  *Id.* at 168:8-9.

Agent Mossman did not "have to jump out of the way of [Sophin's] car," and he did not attempt

to reach into Sophin's car to try to grab the steering wheel.  *Id.* at 168:3-7.  Agent Mossman

explained that he did not reach into the car because: "I weigh 270 pounds.  That car is probably

4,000 [pounds].  It would drag me anywhere."  *Id.* at 170:2-4.

     At trial, the following exchange took place when the prosecutor was questioning Agent

Mossman on direct examination:

| [Prosecutor]: | Okay.  What official duty were you prevented from carrying out? |
|---|---|
| [Agent Mossman]: | Determine his alienage. |
| [Prosecutor]: | Okay.  Were you assaulted? |
| [Agent Mossman]: | No, sir. |
| [Prosecutor]: | All right.  Was there a resistance by Mr. Sophin, a forcible resistance? |
| [Agent Mossman]: | When Mr. Sophin drove off, yes. |
| [Prosecutor]: | Okay. |

| [Defense counsel]: | I object, Your Honor, legal conclusion. |
| The Court: | Overruled. |
| [Prosecutor]: | Did he forcibly oppose you by driving off? |
| [Agent Mossman]: | Yes, sir. |
| [Defense counsel]: | Again, objection, Your Honor. |
| The Court: | Yes, sir.  Overruled. |
| [Prosecutor]: | How about, did he impede your – your duty in determining alienage? |
| [Agent Mossman]: | Yes, sir. |
| [Prosecutor]: | Did he intimidate you in any way? |
| [Agent Mossman]: | No, sir. |

*Id*. at 155:21-156:17.

## II.    STANDARD OF REVIEW

Sophin properly preserved the issue of whether there is sufficient evidence to uphold the conviction by moving for a judgment of acquittal at the close of the Government's case and at the close of all evidence.  *See id*. at 181-83; Mot. for Acquittal.  Accordingly, the Court reviews the issue de novo.  *See United States v. Shum*, 496 F.3d 390, 391 (5th Cir. 2007).

In assessing sufficiency of the evidence, the Court must determine "whether a rational trier of fact could have found that the evidence established the essential elements of the offense beyond a reasonable doubt."  *Id*. at 391 (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *United States v. De Jesus-Batres*, 410 F.3d 154, 160 (5th Cir. 2005)).  The Court views the evidence "in the light most favorable to the verdict, accepting all credibility choices and reasonable inferences made by the trier of fact which tend to support the verdict."  *United States v. Lundy*, 676 F.3d 444, 448 (5th Cir. 2012) (internal quotation marks omitted) (quoting *United*

*States v. Asibor*, 109 F.3d 1023, 1030 (5th Cir. 1997)).  Ultimately, "[t]he [C]ourt's inquiry is limited to whether the jury's verdict was reasonable, not whether we believe it to be correct."  *Id.* (internal quotation marks omitted) (quoting *United States v. Williams*, 264 F.3d 561, 576 (5th Cir. 2001)).

However, the sufficiency challenge requires the Court to determine what conduct constitutes an offense under § 111(a)(1), which involves a question of statutory interpretation. *See United States v. Williams*, 602 F.3d 313, 315 (5th Cir. 2010).  Thus, the Court reviews whether Sophin's conduct constituted "forcible interference" de novo.  *See id.*

## III.   DISCUSSION

At the outset, the Court notes that the Government concedes error in the jury charge and seeks remand to the magistrate court for retrial.[3]  While there may well be error in the jury charge, the Court does not remand the case for a new trial, because, as explained below, there was insufficient evidence to convict Sophin.

### A.   Arguments

Sophin challenges the sufficiency of the evidence to uphold his misdemeanor conviction for forcibly interfering with a Border Patrol agent in violation of 18 U.S.C. § 111(a)(1). Specifically, Sophin argues that there is insufficient evidence to prove the element of "force." *See* Appellant's Br. 20-33, EP-15-CR-418-KC.

According to Sophin, because "forcibly" is not defined in 18 U.S.C. § 111(a), it should be given its common law meaning.  *Id.* at 22-23.  Thus, Sophin argues, "forcibly" should be defined as "the intentional application of unlawful force against the person of another or placing another

---

[3] While the Government argued in its brief that Sophin's conviction must stand because there was sufficient evidence, it now concedes that the Court should reverse Sophin's conviction and sentence, and remand for re-trial, because the magistrate court should have defined "forcibly" for the jury.  *See* Mot. to Remand for New Trial, EP-15-CR-418-KC; Oral Argument, EP-15-CR-418-KC.

in reasonable apprehension of the unlawful use of force against a person." [4]  *Id*. at 28.  Because Sophin refused to answer questions and drove away from the Checkpoint, but at no time hit Agent Mossman, threatened Agent Mossman, or attempted to run Agent Mossman down with his car, Sophin argues that there is insufficient evidence to demonstrate that he used any force against Agent Mossman.  *Id*. at 20.  Thus, Sophin argues, he did not forcibly interfere with Agent Mossman.  *Id*.

Furthermore, Sophin argues that if the Court interprets "forcibly" to cover his conduct, it is interpreting "forcibly" to include the acceleration of mass not directed toward a person.  *Id*. at 28-31.  Such an interpretation renders § 111 unconstitutionally vague and overbroad, according to Sophin.  *Id*.  Finally, Sophin argues that the rule of lenity requires the Court to construe the statute in his favor.  *Id*. at 32-33.

According to the Government, the force Sophin used was his vehicle, a Dodge Magnum, which allowed him to "forcibly flee the checkpoint because [he] was enshrined in this 4-thousand pound box."  Appellee's Br. 12, EP-15-CR-418-KC, ECF No. 14.  The Government further argues that "the use of this two-ton vehicle was tantamount to using a dangerous weapon and thus, equated a use of force."  *Id*.  Moreover, according to the Government, Agent Mossman

> had a reasonable apprehension that [Sophin's] vehicle posed a force of which he could not have stopped . . . . [Sophin] intentionally used his vehicle to forcibly interfere with . . . Agent Mossman's duties at the checkpoint and the vehicle was in itself the 'forcible interference' for which [Sophin] was convicted.

*Id*. at 13.

Thus, the Government argues, Sophin's conviction must stand because a reasonable jury could have found sufficient evidence that Sophin forcibly interfered with Agent Mossman.  *Id*. at 11-13.

---

[4] At oral argument, however, Sophin proposed that "force" be defined as: "Acts or threats of bodily harm that would reasonably deter an officer from performing his or her acts or duties."  Oral Argument, EP-15-CR-418-KC.

**B.        Assaulting, Resisting, or Impeding Certain Officers or Employees**

Under the heading "Assaulting, resisting, or impeding certain officers or employees," 18

U.S.C. § 111(a)(1) provides, in relevant part, that whoever

> (1) forcibly assaults, resists, opposes, impedes, intimidates, or interferes with [any officer or employee of the United States or of any agency in any branch of the United States Government] while engaged in or on account of the performance of official duties; . . . .

> shall, where the acts in violation of this section constitute only simple assault, be fined under this title or imprisoned not more than one year, or both, and where such acts involve physical contact with the victim of that assault or the intent to commit another felony, be fined under this title or imprisoned not more than 8 years, or both.

*Id*. § 111(a).

Section 111(b) includes an enhanced penalty, providing that whoever commits the above acts

using "a deadly or dangerous weapon[,] . . . or inflicts bodily injury, shall be fined . . . or

imprisoned not more than 20 years, or both." *Id*. § 111(b).

"[T]his circuit has interpreted . . . § 111 to create three separate offenses: (1) simple

assault; (2) more serious assaults but not involving a dangerous weapon; and (3) assault with a

dangerous weapon." *Williams*, 602 F.3d at 316 (alteration in original) (internal quotation marks

omitted) (quoting *United States v. Williams*, 520 F.3d 414, 420 (5th Cir. 2008)).  The Fifth

Circuit has "held that simple assault is a misdemeanor offense under § 111(a)." *Id*. (citing

*United States v. Hazlewood*, 526 F.3d 862, 865 (5th Cir. 2008)).  Simple assault is defined "as an

attempted or threatened battery." *Id*.  "By implication, the other two forms of assault are felonies

under the statute." *Id*.

However, "§ 111(a)(1) prohibits more than assault, simple or otherwise." *Id*. at 317.  The

Fifth Circuit joined with the Sixth Circuit in interpreting  "simple assault," as Congress uses it in

§ 111(a), as "a term of art that includes the forcible performance of  [resisting, opposing,

impeding, intimidating, and interfering] *without* the intent to cause physical contact or  to

commit a serious felony."  *See id*. at 317 (emphasis in original) (quoting *United States v.*

*Gagnon*, 553 F.3d 1021, 1026 (6th Cir. 2009)).  Thus, "a misdemeanor conviction under

§ 111(a)(1) does not require underlying assaultive conduct."[5]  *Id*. at 318.   As the Fifth Circuit

explained, this interpretation is consistent with § 111's dual purpose of protecting both federal

officers and federal functions.  *Id*. (citing *United States v. Feola*, 420 U.S. 671, 679 (1975)); *see*

*Feola*, 420 U.S. at 681 ("Although the letter refers only to the need to protect federal personnel,

Congress clearly was concerned with the safety of federal officers insofar as it was tied to the

efficacy of law enforcement activities.").

      While a defendant need not have exhibited "underlying assaultive conduct" or made

physical contact with the federal agent to be convicted of a misdemeanor under § 111(a),

*Williams*, 602 F.3d at 316-18 (noting that "Congress . . . explicitly [drew] the

misdemeanor/felony line at physical contact" and holding that "a misdemeanor conviction under

§ 111(a)(1) does not require underlying assaultive conduct"), the defendant must have acted

"forcibly," *Hazlewood*, 526 F.3d at 865 (noting that "forcibly" "modifies all of the acts rendered

unlawful by § 111(a)(1)").  Thus, "'force' is a necessary element of any § 111 violation."  *United*

*States v. Schrader*, 10 F.3d 1345, 1348 (8th Cir. 1993) (cited approvingly in *Williams*, 602 F.3d

at 317); *see Hazlewood*, 526 F.3d at 865; *United States v. Bamberger*, 452 F.2d 696, 699 (2d Cir.

1971) ("[I]t is a general rule of statutory construction that words in statutes should not be

---

[5] There is a circuit split on the issue of whether a misdemeanor conviction under § 111(a)(1) requires underlying assaultive conduct.  *Compare United States v. Briley*, 770 F.3d 267, 274-75 (4th Cir. 2014) (discussing circuit split and holding that assault is not a required element of a § 111(a) misdemeanor or felony conviction) and *United States v. Williams*, 602 F.3d 313, 316-18 (5th Cir. 2010) (discussing Sixth and Ninth Circuit split and holding that "a misdemeanor conviction under § 111(a)(1) does not require underlying assaultive conduct") and *United States v. Gagnon*, 553 F.3d 1021, 1026 (6th Cir. 2009), *with United States v. Davis*, 690 F.3d 127, 135 (2d Cir. 2012) ("[F]or a defendant to be guilty of the misdemeanor of resisting arrest under Section 111(a), he necessarily must have committed common law simple assault.") and *United States v. Chapman*, 528 F.3d 1215, 1221 (9th Cir. 2008) (holding that convictions under § 111 "require at least some form of assault.").  The Fifth Circuit has not yet had occasion to further delineate the contours of what constitutes "underlying assaultive conduct."

construed as excess verbiage . . . . The word 'forcibly' in section 111 ought to limit the proscribed acts to fewer than would fit the definition of the unmodified verbs alone." (citing Sutherland, Statutory Construction ¶ 4705 (3d ed. 1943))).

### 1.      Insufficient evidence of forcible interference

The Fifth Circuit has not had occasion to delineate precisely what conduct short of physical contact between a defendant and a federal agent constitutes forcibly resisting, opposing, impeding, intimidating, or interfering with a federal agent. At one end of the spectrum, refusal, without more, to cooperate or comply with a federal agent's orders is insufficient to uphold a conviction for forcible resistance under § 111(a)(1). For example, in *United States v. Hightower*, 512 F.2d 60 (5th Cir. 1975), the Fifth Circuit reversed a co-defendant's conviction for forcible resistance where he refused to provide his gun as evidence to the agent and "expressed unwillingness to go to the local law enforcement office," because no evidence showed that the co-defendant "at any time used force against the agent." *Id*. at 61. However, while the defendant must do more than merely refuse to cooperate with the federal agent, "[w]hether a person has opposed the efforts of federal agents with sufficient force . . . can . . . be a troublesome question of degree." *United States v. Cunningham*, 509 F.2d 961, 963 (D.C. Cir. 1975).

At the opposite end of the spectrum, the Fifth Circuit has found sufficient evidence of forcible conduct where the defendant acted toward the federal agent in a forceful manner, for the purpose of resisting, opposing, impeding, intimidating, or interfering with the agent. For example, the Fifth Circuit in *United States v. Williams*, found that even absent "underlying assaultive conduct," there was "ample evidence" that the defendant forcibly resisted the agent because she "swung her arms" at agents while holding a lit cigarette, "for the specific purpose of

resisting the officers' attempts to handcuff her." 602 F.3d at 314, 318. Additionally, in *Hightower*, the Fifth Circuit found sufficient evidence that one defendant forcibly resisted when he refused to identify himself to the officer, and then grabbed the officer's jacket to grab his co-defendant's license. *Hightower*, 512 F.2d at 61. Similarly, in *Carter v. United States*, 231 F.2d 232 (5th Cir. 1956), the defendant "abruptly start[ed] up the car and then perversely continue[d] driving it at a constantly increasing speed while [the agent] was precariously perched[,] desperately struggling to maintain his hold and get in the car to avoid serious and certain injury." *Id*. at 235. The Fifth Circuit concluded, without elaboration, that this conduct was "manifestly a forcible interference." *Id*

Here, Sophin's actions were more similar to the co-defendant's actions in *Hightower*, which consisted of refusing to cooperate with the agent's requests to supply his gun as evidence and expressing unwillingness to come to the police station, 512 F.2d at 61, because Sophin refused to answer Agent Mossman's questions about his nationality, *see* Gov't Ex. 1. While Sophin did not merely refuse to cooperate, and instead drove away from Agent Mossman, there is no evidence that during the thirty-second encounter, Sophin used any force directed at Agent Mossman. *See* Gov't Ex. 1; Jury Trial Tr. 155:24-168:7.

Instead, Sophin's interaction with Agent Mossman stands in contrast to the interaction in *Williams* where the defendant swung her arms at arresting officers for the purpose of resisting arrest, 602 F.3d at 314, 318, the interaction in *Carter*, where the defendant drove erratically while a federal agent was hanging onto his car, 231 F.2d at 235, and the interaction in *Hightower*, where the defendant grabbed the agent's jacket, 512 F.2d at 61. In *Williams*, *Carter*, and *Hightower*, the defendants actively employed force directed at the agent for the purpose of interfering or resisting. In this case, there is no evidence that Sophin directed any force at Agent

Mossman.  *See* Gov't Ex. 1.  Instead, Sophin pulled away from Agent Mossman while Agent

Mossman's head was turned.  *See id*. at 168:8-9; Gov't Ex. 2.  Sophin did not attempt to run

Agent Mossman over, did not "rev up his engine" or "take off, leaving tire marks," and, as Agent

Mossman himself confirmed, Sophin did not threaten or intimidate him.  *See id*.; Jury Trial Tr.

167:18-168:2.

The Government argues that Sophin used his vehicle, a four-thousand pound Dodge

Magnum, to "forcibly flee the checkpoint because [he] was enshrined in this 4-thousand pound

box."  Appellee's Br. 12, EP-15-CR-418-KC.  However, there is no evidence that Sophin was

accelerating rapidly, and when Sophin drove away, he did not attempt to run Agent Mossman

over, threaten Agent Mossman, or "rev up his engine and take off, leaving tire marks" at the

Checkpoint.  Jury Trial Tr. 167:18-25, 168:1.  Agent Mossman did not "have to jump out of the

way of [Sophin's] car," and he did not attempt to reach into Sophin's car to try to grab the

steering wheel.  *Id*. at 168:3-7.  None of the evidence demonstrates that Sophin's act of driving

away from the Checkpoint in his Dodge Magnum was forceful.  Even if Sophin's behavior could

be interpreted as forceful, no act was directed at Agent Mossman as it might have been, for

example, had Sophin driven toward Agent Mossman's person or otherwise used his vehicle or

his person to interfere with Agent Mossman.  Again, as Agent Mossman acknowledged,

"[e]ssentially, [Sophin] pulled away."  *Id*. at 168:8-9.[6]

---

[6] While Agent Mossman testified at trial that there was a "forcible resistance" by Sophin when Sophin drove away, Sophin challenged this testimony as an inadmissible legal conclusion.  *See* Appellant's Br. 41-44, EP-15-CR-418-KC.  Indeed, while witnesses may testify in the form of an opinion or inference that "embraces an ultimate issue to be decided by the trier of fact," witnesses may not give legal conclusions.  *United States v. Izydore*, 167 F.3d 213, 218 (5th Cir. 1999); *see United States v. Espino-Rangel*, 500 F.3d 398, 400 (5th Cir. 2007) (noting that "a non-expert witness may not offer *legal* conclusions"); *United States v. Williams*, 343 F.3d 423, 435 (5th Cir. 2003) ("[Federal] Rule [of Evidence] 704(a) 'does not allow a witness to give legal conclusions.'"); *Owen v. Kerr-McGee Corp.*, 698 F.2d 236, 240 (5th Cir. 1983) ("Rule 704 . . . does not open the door to all opinions.  The Advisory Committee notes make it clear that questions which would merely allow the witness to tell the jury what result to reach are not permitted.  Nor is the rule intended to allow a witness to give *legal* conclusions.").  Accordingly, the Court does not consider Agent Mossman's legal conclusion that there was a "forcible interference" by Sophin as evidence.

Based on the sparse binding precedent as to what conduct short of physical contact constitutes "forcibly interfering" with a federal agent, the Court agrees with Sophin that, given the evidence presented at trial, a rational trier of fact could not have found that he acted forcibly.

Furthermore, the plain language of the statute supports reversing the conviction. Section 111(a)(1) punishes anyone who "forcibly assaults, resists, opposes, impedes, intimidates, or interferes with [*any officer or employee* of the United States or of any agency in any branch of the United States Government]." 18 U.S.C. § 111(a)(1) (emphasis added). The object of the forcible interference is any person who is an officer or employee of the United States or an agency; thus, the plain language necessitates that the interference, and the attendant force, be directed *at* that person. Indeed, the defendants in *Williams*, *Hightower*, and *Carter* all directed force *at* an officer or agent: the defendant in *Williams* swung her arms at arresting officers for the purpose of resisting arrest, 602 F.3d at 314, 318; the defendant in *Hightower* grabbed the officer's jacket, 512 F.2d at 61, and the defendant in *Carter* "perversely" drove his car "at a constantly increasing speed while [the agent] was precariously perched[,] desperately struggling to maintain his hold and get in the car to avoid serious and certain injury," 231 F.2d at 235. Unlike the defendants in *Williams*, *Hightower*, and *Carter*, here, Sophin did not direct any force at Agent Mossman himself; instead, "[e]ssentially, he pulled away." Jury Trial Tr. 168:8-9.

Thus, there is insufficient evidence to uphold Sophin's misdemeanor conviction under § 111(a)(1). Although Fifth Circuit precedent counsels in favor of reversal based on insufficient evidence, due to the distinct facts of the case, and due to the fact that the Fifth Circuit has not had occasion to define "forcibly" in the context of § 111(a)(1), the Court turns to definitions of "force" from case law outside the Fifth Circuit to better illuminate whether Sophin's conduct was forcible under the statute.

2.      **Definitions of "Force" and "Forcibly"**

      a.      **Threats or displays of physical aggression toward an officer as to inspire fear of pain, bodily harm, or death**

Several circuits have adopted a definition of "force" in the context of § 111.  The Sixth Circuit, for example, has held that "[t]he element of force necessary for a conviction . . . may be shown by 'such a threat or display of physical aggression toward the officer as to inspire fear of pain, bodily harm, or death.'"[7]  *United States v. Mtola*, 598 F. App'x 416, 421 (6th Cir. 2015) (internal quotation marks omitted) (quoting *United States v. Chambers*, 195 F.3d 274, 277 (6th Cir. 1999)); *see United States v. Street*, 66 F.3d 969, 977 (8th Cir. 1995) (citing *Schrader*, 10 F.3d at 1348).

      i.      **Threat**

Where force is proven through a threat, several circuits have elaborated that the "threat of immediate harm" must be "coupled with a present ability to inflict harm."  *United States v. Waweru*, No. 13-3292, 2015 WL 5948286, at *2-3 (10th Cir. Oct. 14, 2015) (finding sufficient evidence for forcibly resisting, opposing, impeding, and interfering with a federal officer where, even though "no actual touching occurred," defendant "assumed a fighting stance, made threats, and resisted being handcuffed by fighting and kicking his feet," thereby "present[ing] a willingness and readiness to fight" and making it "objectively appear to a reasonable officer as a threat of immediate harm"); *see United States v. Walker*, 835 F.2d 983, 987 (2d Cir. 1987) ("If the [force] element is to be established by proof of threats rather than by proof of actual touching, the threat must have been of immediate harm."); Eighth Circuit Pattern Jury Instructions, § 6.18.111 at 181, available at

---

[7] Sophin proposed a similar definition of "force" at oral argument: "Acts or threats of bodily harm that would reasonably deter an officer from performing his or her acts or duties."  Oral Argument, EP-15-CR-418-KC.

http://juryinstructions.ca8.uscourts.gov/Manual_of_Model_Criminal_Jury_Instructions_New_an d_Revised%208_5_2014.pdf.

Sophin did not verbally threaten Agent Mossman; in fact, Agent Mossman himself testified that Sophin did not threaten him.  *See* Gov't Ex. 1; Jury Trial Tr. 167:18-168:2. Moreover, the Government stated that it never alleged Sophin attempted or threatened to inflict injury.  Appellee's Br. 7, EP-15-CR-418-KC.  Even though Agent Mossman said he would not have put his arm in Sophin's car because the car would "drag [him] anywhere," Sophin did not drive toward Agent Mossman and Agent Mossman testified that he did not have to jump out of the way of Sophin's car.  Jury Trial Tr. 168:3-7, 170:2-4.  Thus, there are no facts evincing Sophin's present ability to inflict harm.  *Contra Waweru*, 2015 WL 5948286, at *2-3.  A reasonable jury could not have found beyond a reasonable doubt that Sophin acted forcibly based on a threat.

### ii.    Display of physical aggression

Actions that constitute a "display of physical aggression" toward a federal agent that "inspire fear of pain, bodily harm, or death" may include making sudden movements that cause agents to fear an attack, or yelling and behaving in an aggressive manner such that agents fear an impending assault.  *See United States v. Dale*, 539 F. App'x 880, 885 (10th Cir. 2013) (determining that defendant acted forcibly in resisting, impeding, intimidating, and interfering when she "demanded her documents back [from the court clerk]; she actually grabbed them from across the partition; she yelled at everyone, including accusing them of attempting to sabotage her case and kidnap her; and she resisted being removed," and where one federal employee thought defendant was going to assault him); *Gagnon*, 553 F.3d at 1022-23 (upholding misdemeanor conviction for forcibly resisting, impeding, and interfering without physical

contact where defendant "suddenly jump[ed] up," causing one agent to fear defendant might attack, resisted when agents tried to force him to sit down, engaged in "a somewhat tumultuous back and forth" with agents before agents put him in a Border Patrol vehicle, made himself vomit, and spit at agents through the vehicle's security screen "while continually yelling obscenities"); *Street*, 66 F.3d at 977 (finding defendant "made threats and manifested physical aggression toward each officer that would reasonably inspire fear of pain, bodily harm, or death," thereby satisfying the "force" element, when defendant "behaved in an extremely agitated manner, yelling obscenities and swinging his fists").  The Eighth Circuit has held that "the defendant's behavior [must] reasonably have inspired fear in a reasonable person."  *See Street*, 66 F.3d at 977 (internal quotation marks omitted) (citation omitted).  Additionally, the D.C. Circuit specifically addressed the use of a car, noting that "[t]he use of a car purely for flight," and without the intent to use the car as a deadly weapon, "would not involve the element of force."  *United States v. Arrington*, 309 F.3d 40, 45 (D.C. Cir. 2002).

The Fifth Circuit, while not explicitly adopting the Sixth Circuit's definition of force as "a display of physical aggression toward the officer as to inspire fear of pain, bodily harm, or death," has upheld convictions consistent with this definition.[8]  *See Williams*, 602 F.3d at 313, 318 (finding defendant acted forcibly when defendant was holding cigarette while swinging her arms at agents attempting to execute her arrest); *Hightower*, 512 F.2d at 61 (finding defendant acted forcibly when he not only refused to comply with agent's order, but grabbed agent's jacket to retrieve item from inside jacket); *Carter*, 231 F.2d at 235 (finding defendant acted forcibly

---

[8] This Court has also used the Sixth Circuit's definition of "force" in the context of § 111(a).  *See United States v. Hazlewood*, No. SA-06-CR-160-XR, 2007 WL 1888883, at *3 (W.D. Tex. June 20, 2007), *aff'd* 526 F.3d 862 (5th Cir. 2008) (noting that the force element "may be satisfied by proof of actual physical contact, or by proof of such a threat or display of physical aggression toward the officer as to inspire fear of pain, bodily harm, or death." (internal quotation marks omitted) (citation omitted)).

when he accelerated convertible as federal agent was hanging on, "struggling to maintain his hold and get in the car to avoid serious and certain injury").[9]

Sophin did not display a forceful action toward Agent Mossman of any kind, let alone an action that would reasonably "inspire fear of pain, bodily harm, or death."  While it may be objectively reasonable that Agent Mossman feared putting his arm in Sophin's Dodge Magnum as Sophin drove away, there was no corresponding display of force on Sophin's part that would have "inspired" Agent Mossman's fear.  *Contra Waweru*, 2015 WL 5948286, at *2-3; *Dale*, 539 F. App'x at 885; *Williams*, 602 F.3d at 313, 318; *Gagnon*, 553 F.3d at 1022-23; *Street*, 66 F.3d at 977; *Carter*, 231 F.2d at 235.  The uncontroverted evidence establishes that Sophin did not raise his voice, speed away, direct his car at Agent Mossman, or drive away in a forceful manner; as Agent Mossman acknowledged, Sophin simply "pulled away."  *See* Jury Trial Tr. 168:8-9.

At the moment Sophin drove away, Agent Mossman was not touching the car, advancing toward the car, leaning in toward the car, and he did not have to jump out of the car's way.  *See* Jury Trial Tr. 168:3-7; Gov't Ex. 1; Gov't Ex. 2.  Indeed, at the moment Sophin drove away, Agent Mossman had turned to look over his shoulder.  *See* Gov't Ex. 2.  Sophin's act of driving away under these circumstances could not have reasonably inspired fear of pain, bodily harm, or death.  *See Arrington*, 309 F.3d at 45 (Noting that "[t]he use of a car purely for flight," and without the intent to use the car as a deadly weapon, "would not . . . involve the element of force").  Furthermore, to the extent driving at the speed limit could constitute a "display of physical aggression," the fact that Sophin was driving *away* from Agent Mossman indicates that he was not directing any physical aggression toward Agent Mossman.  *See id.*  A reasonable jury

---

[9] Additionally, the Fifth Circuit found sufficient evidence to uphold a defendant's conviction under § 111 in *United States v. Varkonyi*, 645 F.2d 453 (5th Cir. 1981), noting that the defendant had exhibited "abusive language and physical acts of aggression."  *Id*. at 459.  Unlike Sophin, however, the defendant had been convicted of forcibly assaulting, as well as interfering with a Border Patrol agent, and the record showed two physical confrontations between the defendant and the agent, including yelling, cursing, and pinning an agent's arms to his side and forcing him out of defendant's property.  *Id*. at 459 n.5.

could not have found beyond a reasonable doubt that Sophin acted forcibly based on a determination that he displayed physical aggression that would objectively inspire fear of pain, bodily harm, or death.

> **b.     Ordinary vs. common law meaning of "forcibly"**

In *Johnson v. United States*, 559 U.S. 133 (2010), the Supreme Court examined the various definitions of "force" in its attempt to define "physical force" in the context of the Armed Career Criminal Act, 18 U.S.C. § 924(e)(2)(B)(i).  Because the provision did not define "physical force," the Court gave the phrase its "ordinary meaning."  559 U.S. at 138.  Specifically, the Supreme Court recognized that "'force' has a number of meanings." *Id*.  The Court disregarded the specialized meaning of force "in the field of physics: a cause of the acceleration of mass." *Id*. at 138-39 (citing Webster's New International Dictionary 986 (2d ed.1954)).

Instead, the Court recognized that "[i]n more general usage [force] means '[s]trength or energy; active power; vigor; often an unusual degree of strength or energy,' '[p]ower to affect strongly in physical relations,' or '[p]ower, violence, compulsion, or constraint exerted upon a person.'" *Id*. at 139; *see Forcible*, Black's Law Dictionary (10th ed. 2014) (hereinafter "Black's") (defining "forcible" as "effected by force or threat of force against opposition or resistance," and defining force as "[p]ower, violence, or pressure directed against a person or thing.");[10] Webster's Third International 887 (2002) (hereinafter "Webster's") (providing several definitions for "force," including (1) "power, violence compulsion, or constraint exerted upon or against a person or thing;" (2) "strength or power of any degree that is exercised without

---

[10] Black's proceeds to define different types of force.  For example, "actual force" is "[f]orce consisting in a physical act, esp. a violent act directed against a robbery victim," and is synonymous with "physical force."  *Actual Force*, Black's Law Dictionary (10th ed. 2014).  "Constructive force" means "[t]hreats and intimidation to gain control or prevent resistance; esp., threatening words or gestures directed against a robbery victim."  *Constructive Force*, Black's Law Dictionary (10th ed. 2014).

justification or contrary to law upon a person or thing;" and (3) "violence or such threat or display of physical aggression toward a person as reasonably inspires fear of pain, bodily harm, or death").

In addition, the Supreme Court found that there was also "a more specialized legal usage of the word 'force': its use in describing one of the elements of the common-law crime of battery, which consisted of the intentional application of unlawful force against the person of another." *Johnson*, 559 U.S. at 139.  At common law, the element of force was "satisfied by even the slightest offensive touching." *Id*. (citing 3 W. Blackstone, Commentaries on the Laws of England 120 (1768)).  Thus, the Court examined whether the phrase "physical force" incorporated "the specialized meaning [of force] that it bore in the common-law definition of battery," or whether its ordinary meaning was more appropriate. *Id*.

The Court explained further that "[a]lthough a common-law term of art should be given its established common-law meaning . . . , [the Court would] not assume that a statutory word is used as a term of art where that meaning does not fit." *Id*.  "Ultimately, context determines meaning," and in rejecting the common-law meaning of "force" and employing the ordinary meaning instead, the Court noted that it does not "force term-of-art definitions into contexts where they plainly do not fit and produce nonsense.'" *Id*. at 139-40 (quoting *Gonzales v. Oregon,* 546 U.S. 243, 282 (2006) (Scalia, J., dissenting)).

Following the Supreme Court's analysis, the Court defines "force" in the context of § 111 using the ordinary meaning.  Using the common law definition, which defines force as "even the slightest offensive touching," is inappropriate because a conviction under § 111(a) does not require physical contact.  *See Williams*, 602 F.3d at 318 ("a misdemeanor conviction under

§ 111(a)(1) does not require underlying assaultive conduct").  Thus, this Court examines the evidence pursuant to the ordinary definition of "force."

Perhaps the broadest ordinary definition equates force with "power, violence, or pressure directed against a person or thing."  *Forcible*, Black's (10th ed. 2014); Webster's 887 (2002). Even under this generous definition, the evidence presented at trial is insufficient to uphold Sophin's misdemeanor conviction for forcibly interfering with Agent Mossman.  Assuming Sophin's act of driving his car constituted "power, violence, or pressure," Sophin did not drive toward Agent Mossman, or otherwise direct any power, violence, or pressure against Agent Mossman.  Thus, under this definition, a rational fact finder could not have found beyond a reasonable doubt that Sophin "forcibly" interfered with Agent Mossman.

The Government did not propose a definition of "forcibly."  *See* Oral Argument, EP-15-CR-418-KC.  However, the Government's arguments that (1) the force Sophin used was his vehicle, which allowed him to "forcibly flee the checkpoint because [he] was enshrined in this 4-thousand pound box"; (2) "the use of this two-ton vehicle . . . equated a use of force"; (3) "[Sophin's] vehicle posed a force which [Agent Mossman] could not have stopped"; and (4) "the vehicle was in itself the 'forcible interference,'" Appellee's Br. 12-13, EP-15-CR-418-KC, appear to suggest that "force" be defined as it is in the field of physics – as "a cause of the acceleration of mass," *Jones*, 559 U.S. at 138-39.

Were the Court to adopt the definition of "force" as used in the field of physics, and as the Government seems to propose, 18 U.S.C. § 111(a)(1) would sweep a broad range of innocent behavior into the category of prohibited conduct.  For example, simply walking away from an officer, or riding away on a bicycle, could constitute "forcibly interfering" because such acts

would cause the acceleration of mass.  Interpreting § 111(a)(1) as the Government proposes would render the word "forcibly" superfluous, and proscribe nearly any interference.

Yet, "[i]t is a cardinal principle of statutory construction that a statute ought, upon the whole, to be so construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant."  *TRW Inc. v. Andrews*, 534 U.S. 19, 31 (2001) (internal quotation marks omitted) (citations omitted).  Thus, the Court rejects the definition of "force" used in the field of physics, and accordingly the Government's interpretation of forcible interference, because "[t]he word 'forcibly' in section 111 ought to limit the proscribed acts to fewer than would fit the definition of the unmodified verbs alone."  *Bamberger*, 452 F.2d at 699; *see Hazlewood*, 526 F.3d at 865 (noting that "forcibly" "modifies all of the acts rendered unlawful by § 111(a)(1)"); *Schrader*, 10 F.3d at 1348 (ruling that "'force' is a necessary element of any § 111 violation") (cited approvingly in *Williams*, 602 F.3d at 317).

The Court does not suggest, however, that driving away can *never* constitute a forcible interference under § 111(a)(1).  Instead, under the facts presented, there is insufficient evidence to uphold Sophin's misdemeanor conviction under 18 U.S.C. § 111(a)(1) for forcibly interfering with Agent Mossman.

## III.   CONCLUSION

Based on Fifth Circuit precedent and the various definitions of "force" that other courts have proposed, and viewing the evidence in a light most favorable to the verdict, a rational trier of fact could not have found beyond a reasonable doubt that the evidence established that Sophin acted "forcibly," as required for a conviction under § 111(a)(1).  Accordingly, there is insufficient evidence to uphold Sophin's conviction for forcibly interfering with Agent Mossman, in violation of § 111(a)(1).  Sophin's conviction must be overturned.

The judgment of the magistrate court is **REVERSED**.

**SO ORDERED.**

**SIGNED this 22nd day of December, 2015.**

KATHLEEN CARDONE
UNITED STATES DISTRICT JUDGE